STATE, PLAINTIFF, *v*. LISBON SALES BOOK COMPANY, DEFENDANT.
STATE, PLAINTIFF, *v*. SUFRIN, DEFENDANT.
STATE, PLAINTIFF, *v*. SUFRIN, DEFENDANT.
STATE, PLAINTIFF, *v*. SUFRIN, DEFENDANT.
STATE, PLAINTIFF, *v*. SCHIEDLMEIER, DEFENDANT.

Common Pleas Court, Columbiana County.

Nos. 7356, 7357, 7358, 7359 and 7360. Decided December 14, 1961.

*Mr. G. William Brokaw*, prosecuting attorney, and *Mr. John W. Gleason*, assistant attorney general, for the state.

*Mr. W. B. Moore, Jr.*, and *Mr. Gilbert Helwig*, for defendants.

SHARP, J.

THE COURT. All these cases come into this Court on Defendants' Demurrer to the Indictments.

The Demurrers are identical and are as follows:—

"Now comes the Defendant and demurs to the Indictment on the following grounds:—

"1. The portion of Section 2915.11, Revised Code, upon which the Indictment is based, is in violation of the due process clause of Article 14, Paragraph 1 of the Constitution of the United States and the due course of law clause of Article 1, Paragraph 16 of the Constitution of the State of Ohio and is therefore unconstitutional and void.

"2. The Indictment does not state facts constituting a crime under the laws of this State."

The Defendants have filed identical Motions in support of their demurrers and the State has filed a Brief in reply thereto.

Counsel are now permitted to present oral arguments supporting and supplementing their written Briefs.

THEREUPON, ARGUMENTS WERE MADE TO THE COURT.

THE COURT. The Statute of Section 2915.11, Revised Code, which the State claims the Defendants have violated is as follows:—

"No person shall manufacture, print, vend, sell, barter, or dispose of a ticket, order, or device for or representing a number of shares or an interest in a scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' or by words or terms of similar import, located in or to be drawn, paid, or carried on within or without this state.

"Whoever violates this section shall be fined not less than $500.00 nor more than $1,000.00 and imprisoned not less than one nor more than three years."

The Indictments under which the Defendants are charged are as follows:—

"The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County (Columbiana) aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that (and in each case the individual is named, that is, Martin Sufrin in Case No. 7357, Isadore Sufrin in Case No. 7358, Joseph Sufrin in Case No. 7359, Michael Schiedlmeier in Case No. 7360) on the 6th day of September, 1961, at the County of Columbiana aforesaid,

"FIRST COUNT

"did manufacture and print a certain ticket, order, or device for or representing an interest in a scheme of chance known as 'policy' and/or 'numbers game' contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

"SECOND COUNT

"And the jurors of the Grand Jury aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that said Martin Sufrin (and each of the other three individual defendants) aforesaid, on the 6th day of September, 1961, at the County of Columbiana aforesaid, did aid, abet and procure the manufacture and printing of a certain ticket, order or device for or representing an interest in a scheme of chance known as 'policy' and/or 'numbers game,' contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio."

The Indictment of the Corporation itself is different in that it contains only the first count charging the corporation with manufacturing and printing the ticket, order or device, and does not contain the second count charging the corporation with aiding, abetting and procuring the manufacture and printing of such a ticket, order or device.

The Indictment follows the wording of Section 2915.11, Revised Code, and by virtue of Section 2941.05, Revised Code:—

"In an indictment * * * charging an offense, each count shall contain, and is sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. * * * It may be in the words of the section of the Revised Code describing the offense * * *."

Therefore, if an Indictment follows the wording of the Statute it does state facts constituting a crime under the State of Ohio, provided, of course, that the Statute sets forth a crime. If the Statute does not set forth a crime it, the Statute, would be unconstitutional and the Indictment itself would not state facts constituting a crime under the laws of the State of Ohio.

This matter was earlier before this Court on Defendants' Motion to Quash the Indictment "by reason of a defect apparent upon the face of the record in this, to-wit: the act or conduct of which the Defendant is accused does not constitute a violation of any Statute of the State of Ohio." This Motion was argued and the Court found that the determination of said Motion hinged largely on interpretation of the word "for" in the Statute where it states that:—

"No person shall manufacture, print, vend, sell, barter, or dispose of a ticket, order, or device *for* or representing a number of shares or an interest in a scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' or by words or terms of similar import, * * *."

The Court in his opinion on said Motion held that the word "for" meant "to be used in connection with" and that, therefore, the pertinent part of the Statute should read as follows:—

"No person shall manufacture, print, vend, sell, barter, or dispose of a ticket, order, or device used in connection with representing a number of shares or an interest in a scheme of chance known as 'policy,' and so forth."

The Court therefore said in his opinion:—

"It is my considered opinion that the word 'for' in the Statute means to be used in connection with, or simply to be used for, and does not require the manufacturer or printer to actually sell numbers himself or participate in the numbers or policy game. For that reason the Defendants' Motions to Quash the Indictment in each case will be Overruled and the Defendants may have their exceptions."

It is my opinion that the demurrer in these cases goes to the heart of this matter. This Statute was written to punish every kind of participation in the so-called "numbers game" and attempted to cover all commonly used names for such games such as "policy," "numbers game," and "clearing house," and

then goes on to say "or by words or terms of similar import." The Statute also attempted to cover every means by which the chances were sold or disposed of such as a "ticket," "order," or "device." Prior to September 1, 1961, the effective date of the present Statute, the Statute in effect since September 21, 1943, then known as Section 13063-1, General Code, was as follows:

"Whoever vends, sells, barters or disposes of a ticket, order or device for or representing a number of shares or an interest in a scheme of chance known as 'policy,' 'numbers game,' 'clearing house' or by words or terms of similar import, whether located or to be drawn, paid or carried on within or without this state, shall, upon first conviction thereof, be fined not more than five hundred dollars or imprisoned not more than six months, or both, and, upon the second or succeeding convictions thereof, shall be fined not less than five hundred dollars nor more than one thousand dollars or imprisoned in the penitentiary not less than one year nor more than three years, or both."

When the Statutes of Ohio were revised this law then became Section 2915.11, Revised Code, effective October 1, 1953. Until this section was last amended, effective September 1, 1961, it did not include manufacturing or printing but in the last amendment the words "manufacture" and "print" were added to the Statute.

It has since the beginning of our Nation and our State been the policy of this country and of this state that a person should not be punished for a crime unless they knew they were committing a crime or intended to commit a crime but, of course, it was not always necessary to put in the Statutes the words that they intended to commit a crime. For instance, it is a crime to commit robbery or rape upon another person and the Statute has never specifically stated that this must be done with the intent to do wrong.

Prior to the latest amendment Section 2915.11, Revised Code, simply provided that:—

"No person shall vend, sell, barter, or dispose of a ticket, order, or device for or representing a number of shares or an interest in a scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' * * *."

That Statute did not provide that the selling, bartering or disposing of a ticket, order, or device, for such a purpose should be done with intent to commit a crime because it was quite evident to everyone, layman and lawyer alike, that engaging in such a game was a crime. I find no case where the constitutionality of the old statute has even been attacked let alone successfully attacked.

The point to be considered here is the amendment to the Statutes adding the word "manufacture" and "print." While a person who sells, barters or disposes of a ticket, order, or device for or representing a number of shares or an interest in a scheme of chance known as "policy," "numbers game," and so forth must of necessity know that he is engaging in an illegal activity, the same cannot be said of one who manufactures or prints a ticket, order or device, which may be used in such a scheme of chance. If the ticket, order or device was so clear upon its face that it could only be used for the numbers game so that the person manufacturing it or printing it, must of necessity have known what it was to be used for, there might be no constitutional exception to such a law.

In this case the Defendants have asked for a Bill of Particulars, and in the Bill of Particulars it is stated that:

"The ticket, order, or device, is described as a pad of paper, 2-3/4 inches by 5-3/4 inches in size, containing 150 sheets, with 2 sheets of carbon paper attached at the back of said pad. The sheets in said pad are numbered, serially, from one (1) to fifty (50), with three (3) sheets, yellow, flimsy, and white—each being given the number '1,' and so on, so that each pad may be used for fifty (50) separate transactions."

A pad, as described above, is attached to the Bill of Particulars in Case No. 7356, marked Exhibit 1, to which counsel is referred. In addition to the serial numbers mentioned in the Bill of Particulars, each sheet at the top has the letter "M," then the word "date," following that 196 and a little blocked off space below. It may be assumed that in addition to the date space is provided for noting the time of day.

To someone who was familiar with numbers writing it might be apparent that this pad is to be used for that purpose. It could, of course, be used for any notation such as, for example,

214

the listing of a telephone call. Certainly it is not apparent by an inspection of the pad that it is to be used exclusively for the numbers game.

Let's suppose that the Defendants had printed a pad of this size without anything being printed on the slips. It could still be used by numbers writers, although it would require them to note the time of day and the date and whatever other number they might have on the separate slips of paper, and if such a plain pad had been manufactured and had been used by numbers writers, would not the manufacturing and printing of such a pad be a crime under the Statute as now amended? I believe that it would.

I am of the opinion that as applied to the manufacturer or printer of such a "ticket, order or device" the Statute should provide something as follows:—

"No person shall manufacture or print a ticket, order, or device, knowing that it is to be used or intending it to be used for or representing a number of shares or an interest in a scheme of chance known as 'policy,' 'numbers game,' 'clearing house,' and so forth."

This would put no impossibility upon the State to show: First, that such a device was used in the numbers game, and, Second, that by reason of the persons to whom the devices were sold, it was used in the numbers game. The lines and numbers on the pad itself could be used as circumstantial evidence that the manufacturer and printer knew the purpose for which it was to be used. Such a Statute would protect the innocent and still not make it difficult for the State to punish the guilty.

Since the Statute as amended is of very recent origin I think that even a Court of Common Pleas may question the constitutionality of the Statute.

I find that the Statute, except for the words "manufacture" and "print," is valid and constitutional, but I do find that as to the words "manufacture" and "print," in other words, where it attempts to cover the manufacturer or printer without as to them, requiring that they must know or intend that the device will be used for the numbers game is unconstitutional, under Section 1 of the Fourteenth Amendment to the Constitution of the United States which states that:—

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law."

I cannot see how Section 16 of Article 1 of the Ohio Constitution applies to Section 2915.11, Revised Code.

The Indictment follows the Statute, as is perfectly proper for an Indictment to do, but since I have found that the Statute is unconstitutional as to manufacturers and printers, then, of course, I must find that the Indictment does not state facts constituting a crime under the laws of this State.

The demurrer to the Indictment is, therefore, Sustained and the State may have its exceptions.