OPINION
This appeal is taken by Defendant-Appellant Willard E. Reigle, Jr. from the judgment entered by the Court of Common Pleas of Hancock County finding Reigle, Jr. guilty on four counts of rape and the sexually violent predator specifications contained therein.
On November 17, 1998, Willard E. Reigle was indicted on four counts of rape, violations of R.C. 2907.02(A)(1)(b), and four specifications alleging that Reigle was a sexually violent predator as defined by R.C.2971.01(H)(1). On January 29, 1999, Reigle moved to dismiss the sexually violent predator specifications contained in the indictment. The trial court overruled the motion. After several months Reigle was finally brought to trial. On October 7, 1999, Reigle was found guilty on four counts of rape. On November 1, 1999, the trial court held a hearing concerning the specifications contained within the indictment. After consideration of the evidence adduced at trial the court found Reigle guilty of the four sexually violent predator specifications contained within the indictment.
On March 10, 2000, after finding Reigle guilty of four counts of rape and the specifications contained therein the trial court sentenced Reigle to serve a prison term of ten years to life for each of four rape convictions and the specifications contained therein. The terms were to be served consecutively, thus resulting in an aggregate sentence of forty (40) years to life.
On appeal from the judgment Reigle presents five assignments of error.
 The trial court erred by its failure to dismiss the sexually violent predator specification.
 The trial court committed prejudicial error by admitting prior acts at the trial before the court on the sexually violent predator specification and there was insufficient evidence presented for the court to find this defendant a sexually violent predator.
In his first two assignments of error Reigle claims that the trial court erred when it found him guilty of the four sexually violent predator specifications contained in the indictment. In support of that assertion Reigle presents several arguments. Initially Reigle claims that the trial court erred by failing to dismiss the sexually violent predator specifications contained within the indictment prior to trial. Specifically Reigle claims that the four sexually violent predator specifications should have been dismissed prior to trial because that section of the revised code is inapplicable to his case and further, to prosecute Reigle under that section violates his due process rights under both the federal and state Constitutions. In the alternative Reigle claims that even if the trial court did not err by dismissing the indictments prior to trial it erred by finding him guilty of the specifications because the State failed to produce sufficient evidence to sustain the verdict.
For purposes of clarity, we will begin by addressing the trial court's alleged error in failing to dismiss the indictment prior to trial because the sexually violent predator specification is inapplicable to Reigle.
"It is well established that a charging instrument, including a complaint, is sufficient if it tracks the language of the statute." Statev. Burdine-Justice (1998), 125 Ohio App.3d 707 citing State v. McNeese
(Oct. 23, 1995), Warren App. No. CA93-12-108, unreported, at 8-9, 1995 WL 617589, following State v. Marcinski (1921), 103 Ohio St. 613, 618,134 N.E. 438, 439. "A charging instrument does not need to be in the exact language of the statute so long as all the essential elements are contained in language equivalent to that used in the statute." Id at 711 citing McNeese at 10, following State v. Oliver (1972), 32 Ohio St.2d 109,111, 61 O.O.2d 371, 372-373, 290 N.E.2d 828, 829-830.
The requirements for an indictment containing a sexually violent predator specification are contained in R.C. 2941.148. It is in pertinent part:
 The application of Chapter 2971 of the Revised Code to an offender is precluded unless the indictment, count in the indictment, or information charging the sexually violent offense or charging the designated homicide, assault or kidnapping offense also includes a specification that the offender is a sexually violent predator. The specification shall be stated at the end of the body of the indictment, count or information and shall be stated in substantially the following form:
 "SPECIFICATION * * * The grand jury * * * further find that the offender is a sexually violent predator."
 In determining for purposes of this section whether a person is a sexually violent predator, all of the factors set forth in divisions (H)(1) to (6) of section 2971.01 of the Revised Code that apply regarding the person may be considered as evidence tending to indicate that it is likely that the person will engage in the future in one or more sexually violent offenses.
 As used in this section, * * * "sexually violent predator" ha[s] the same meaning as in section 2971.01 of the Revised Code.
In the present case, Reigle was indicted on four counts of rape, a violation of R.C. 2907.02(A)(1)(b). Each count of rape included a sexually violent predator specification. The indictment is in part:
 The jurors of the grand jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, in the name and by the authority of the State of Ohio, do find and present that on or between the 15th day of June, 1998 and the 15th day of July 1998, at Findlay, Hancock County, Ohio, Willard E. Reigle Jr. did engage in sexual conduct with another, one* * * *, age ten (10), having a date of birth of July 31, 1987, and not the spouse of the said Willard E. Reigle, Jr.
SPECIFICATION TO THE FIRST COUNT
 We the grand jurors further find and specify that the aforesaid Willard E. Reigle, Jr. is a sexually violent predator in violation of the Ohio Revised Code Title 29 Section 2907.02(A)(1)(b) and against the peace and dignity of the State of Ohio.
On January 29, 1999, and again on October 19, 1999, Reigle filed a motion to dismiss the specifications. Reigle argued that the section of the Revised Code defining sexually violent predator did not apply to him because he had not previously been convicted of a sexually violent offense as mandated by the statute, and thus the State did not have sufficient evidence to prosecute him under the specification.
However, the record clearly reveals that the indictment outlined in part above followed the parameters of the statute charging the crime. Moreover, it is well settled that a trial court on a motion to dismiss an indictment can only look to the face of the indictment to ascertain its validity. State v. Varner (1991), 81 Ohio App.3d 85, 86. Further, it has been decided that,
 "[A] motion to dismiss charges in an indictment tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the state or the defendant. * * * The proper determination was whether the allegations contained in the indictment made out offense under Ohio criminal law. If they did, it was premature to determine, in advance of trial, whether the state could satisfy its burden of proof with respect to those charges."
State v. Patterson (1989), 63 Ohio App.3d 91, 95, 577 N.E.2d 1165, 1167; See also State v. Parrish (2000), Paulding County App. No. 11-2000-06, unreported; State v. Peters (2000), Paulding County App. No. 11-2000-05 Therefore, because the charges outlined in the November 27, 1998, indictment charged a crime pursuant to R.C. 2941.148, the motion to dismiss predicated on insufficiency of the evidence filed by Reigle prior to trial of the specification contained in the indictment was premature. As a result, we do not conclude that the trial court committed error by refusing to dismiss specifications contained within the indictment based solely on insufficiency.
Next, Reigle claims that if the trial court did not commit error by refusing to dismiss the specifications prior to trial thereon then it surely committed error by finding Reigle guilty of the specifications because the State failed to produce sufficient evidence to sustain the verdict.
Initially, we observe "on the trial of a case, either civil or criminal, the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. "Sufficiency is a term of art meaning that the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v.Thompkins (1997), 78 Ohio St.3d 380, 382.
When a defendant challenges the sufficiency of evidence, we determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560. To reverse a judgment of a trial court when there is insufficient evidence to support it, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary.Thompkins at paragraph three of the syllabus.
Reigle was charged with a sexually violent predator specification in accordance with R.C. 2941.148. In order to determine whether Reigle is a sexually violent predator the factors set forth in R.C. 2971.01 (H) must be examined. R.C.2971.01 (H) provides:
 "Sexually violent predator" means a person who has been convicted of or pleaded guilty to committing, on or after the effective date of this section, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.
It is undisputed and the record clearly discloses that Reigle had not been convicted of any qualifying "sexually violent offenses" prior to the November 17, 1998 indictment.[1] Based on this undisputed fact Reigle claims the evidence presented by the State at the hearing on the specification, that on October 7, 1999, he was convicted on four counts of rape, was insufficient proof that he had been convicted of a prior sexually violent offense as required by the statute.
Specifically Reigle claims that the obvious intent of the R.C. 2971.01(H) was to punish previous sexually violent offenders for previous sexually violent offenses not, as in this case, to punish for concurrent convictions in the underlying indictment. Therefore, he argues, the statute would not specifically require an indictment to allege that the State has evidence upon which to prove the charges. Further the language of the statute would not be couched in terms of past tense if the future is contemplated. Otherwise, he argues the purpose of the indictment becomes superfluous.
The state claims however, that as long as Reigle was convicted of the underlying rapes contained within the indictment before the hearing was held on the sexually violent predator specifications the evidence is sufficient and the verdict should be sustained. We disagree
In order to determine whether R.C. 2971.01(H) requires a prior conviction for adjudication as a sexually violent predator or simply requires conviction of the underlying offense contained in the indictment, we examine the statute in its entirety as well as its application through indictment, trial, conviction and sentencing. We also compare and contrast other specifications defined in the Revised Code that enhance the penalty of an accused and are required to be included in the indictment for prosecution, including, the death penalty specification, the firearm specification, the gang specification and the sexual motivation specification.
At the outset we observe that the "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state and liberally construed in favor of the accused." R.C. 2901.04(A)
As outlined above, R.C. 2941.148 precludes the application of Revised Code Chapter 2971 (sentencing for sexually violent predators) unless the indictment or information charging a sexually violent offense includes a specification that the accused is also a sexually violent predator. Therefore, in order for an individual accused of a sexually violent offense to be adjudicated a sexually violent predator the State must include a sexually violent predator specification in the indictment alleging the accused is a sexually violent predator in addition to the underlying charge. Further, R.C. 2971.01(I) defines the "sexually violent predator specification" as an assertion that the accused is charged with being a "sexually violent predator".
As stated above R.C. 2971.01(H) defines a "sexually violent predator" as a "person who has been convicted of or pleaded guilty to committing, on or after the effective date of this section, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." (emphasis added) Further, to determine whether the individual charged as a sexually violent predator is likely to engage in the future in one or more sexually violent offenses, the trier of fact may consider the following factors:
 The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
 The person has a documented history from childhood, into juvenile developmental years, that exhibit sexually deviant behavior.
 Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
 The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
 The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
Any other relevant evidence.
Accordingly, in order to convict a person of the sexually violent predator specification contained within an indictment the prosecutor must show not only that the alleged sexually violent predator has been convicted of a sexually violent offense but that he has the likelihood of engaging in the future in one or more sexually violent offenses. It goes without saying then, that the indictment charging the specification alleges that the offender is a sexually violent predator, that is, an individual who has been convicted or plead guilty to a sexually violent offense and is likely to engage in such acts in the future.
If both elements are proven, an offender's penalty may be enhanced to include penalties ranging from life without parole to indefinite sentences consisting of not less than two years and a maximum term of life imprisonment. R.C. 2971.03(A)(1)-(4). Furthermore, both judicial release and parole may be prohibited. R.C.2971.03(C).
In the case sub judice the state filed a Bill of Particulars pursuant to the Defendant's request and Crim.R. 7(E). It is in part:
AS TO THE SPECIFICATION TO THE FIRST COUNT:
 The State would submit that based upon the above acts and conduct the Defendant, Willard E. Reigle, Jr., committed a sexually violent offense and that he is likely to engage in the future in one or more sexually violent offenses. (emphasis added)
The use of the allegation "committed" by the state fails to constitute a crime under the "sexually violent predator specification." The state must allege that Reigle had been "convicted of or pleaded guilty to" a sexually violent offense in order to allege that Reigle was a sexually violent predator. Hence it naturally follows that the state may not rely on the underlying charge contained in the indictment to allege that "conviction" because the offender has not yet been convicted of those charges. To the contrary, because the state has alleged in the indictment that the offender has been "convicted of or pleaded guilty to" a sexually violent offense, the state must show that the accused has been convicted of a sexually violent offense prior to conviction on the offense charged in the indictment.
In comparison, other specifications contained within the Revised Code may be proven upon the facts that constitute the underlying offense. However, none of these specifications require that an individual be "convicted", but only require a showing that the accused "commit" or "committed" the specification while committing the underlying offense.
For example, R.C. 2941.141 is a firearm specification. It precludes application of the penalty enhancements contained within R.C. 2929.14
unless it is charged in an indictment. Further it must charge that the "offender had a firearm on or about the offender's person or under the offender's control while committing the (underlying) offense."
R.C. 2941.142 is a gang specification. It precludes application of the penalty enhancements contained within 2929.14 unless it is charged in an indictment. A specification brought under this section must charge that "an offender who committed a felony (the underlying offense) that is an offense of violence while participating in a criminal gang."
R.C. 2941.147 is a sexual motivation specification. If the indictment charges one of the offenses listed in the statute it may also include a sexual motivation specification. A "sexual motivation specification" as defined by R.C. 2971.01 means "that a person charged with a designated homicide, assault, or kidnapping offense committed the offense with sexual motivation."
Additionally, R.C. 2929.04 contains the criteria necessary for imposing death. Imposition of the death penalty is not allowed unless one of the aggravating circumstances listed in the statute is included in the indictment. The aggravating circumstances include:
 The offense was the assassination of the president of the United States * * *
The offense was committed for hire.
 The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.
 The offense was committed while the offender was under the detention or while the offender was at large after having broken detention.
The foregoing specifications are proven in part by using the underlying offense charged in the indictment. However, unlike the sexual predator specification they do not require that the indictment allege that the accused has been "convicted" of a specific charge constituting one of the underlying offenses. To the contrary, the foregoing sections of the Revised Code contemplate enhancement of the penalty when a crime has been committed in a certain way.
Finally, R.C. 2971.03(A)(4), the sentencing provision of the Chapter 2971 for sexually violent predators, uses language that contemplates a three-time loser. It is in part:
 For any offense, if the offender previously has been convicted of or pleaded guilty to a sexually violent offense and also to a sexually violent predator specification that was included in the indictment, count in the indictment, or information charging that offense, it shall impose upon the offender a term of life imprisonment without parole.
This portion of the statute supports our interpretation outlined above. Specifically, an individual must first be convicted of or pleaded guilty to a sexually violent offense. After conviction, the individual commits another crime, and in addition to indictment for that crime, is indicted as a sexually violent predator. Once an individual is convicted of a sexually violent predator specification they may be imprisoned for a indefinite term of life in prison with eligibility for parole.
Finally as contemplated by R.C. 2971.03(A)(4), after both of the above have occurred and the offender commits another crime, he is required to be sentenced to life in prison with no eligibility for parole. Therefore, to say that the state may prove that an "individual has been convicted or pleaded guilty to" a sexually violent offense by using the underlying charges in the indictment, would lead to an awkward and obtuse interpretation and application of the sentencing provisions contained in R.C. 2971.03(A)(4).
In light of the foregoing analysis, we interpret R.C. 2971.01(H) to mean that the accused must have been convicted of a sexually violent offense prior to conviction of the offense charged in the indictment.
It is undisputed that Reigle had not been convicted of a qualifying sexually violent offense prior to the November 17 indictment. Further, the record reveals that the state, despite this included four sexually violent predator specifications in the indictment. The Bill of Particulars filed by the State illustrates that the State intended to show that Reigle had been "convicted" of a sexually violent offense by using the offenses charged in the indictment of which he had not yet been convicted. In light of the foregoing principles outlined above, we find that the evidence used to convict Reigle of the "conviction" prong of the sexually violent predator specification was insufficient as a matter of law. We do not decide or disturb the finding that Reigle is likely to commit future sexually violent offenses.
 Reigle's second assignment of error is sustained. The trial court committed prejudicial and plain error by its failure to grant the defense motion for an expert witness to determine the defendant's competence to waive his Fifth Amendment Miranda rights and to present such evidence in a motion to suppress.
In his third assignment of error Reigle claims that the trial court erred by refusing to appoint an expert witness to determine his competency to waive his Miranda rights at the time he confessed. In absence of statutory authority for the court's responsibility to appoint an expert, Reigle relies on State v. Rossiter (1993), 88 Ohio App.3d 162.
Reigle's reliance is misplaced. In State v. Rossiter (1993),88 Ohio App.3d 162, the Fourth District stated in dicta that "the trialcourt should take care to determine that the defendant comprehended theevents occurring at the time of the statement." The record reveals thatthe trial court did indeed order a mental evaluation of Reigle prior totrial to determine Reigle's competency to stand trial. The competencystandard for waiving constitutional rights is the same as that used todetermine the competency of the defendant to stand trial. Godinez v.Moran (1993), 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321; State v.Watson (1998), 132 Ohio App.3d 57, 63 (competency for waiving the right to counsel is the same as that applicable for determining the competency to stand trial).
 No error having been shown Reigle's third assignment of error is overruled.
 The trial court committed prejudicial error in allowing the testimony of Jill Stonebreaker concerning the hearsay statements made by the alleged victims.
In his fourth assignment of error Reigle claims that the trial court erred by admitting the statements of a social worker, Jill Stonebreaker, concerning the statements made by the alleged victims implicating Reigle. Initially, we observe that the trial court has broad discretion in determining the admissibility of evidence. Evid.R. 104. Any error alleged in the admission of evidence may only be shown by establishing that the trial court abused its discretion. Metaullics Systems CompanyL.P. v. Molten Metal Equipment Innovations, Inc. (1996),110 Ohio App.3d 367, 674 N.E.2d 418. "The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v.Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149.
The state admits that the statements were hearsay but argues that they were admissible under Evid.R. 803(4), which recognizes a hearsay exception for statements made for purposes of medical diagnosis or treatment. Evid.R. 803(4) provides the following exception:
 Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause of external source thereof insofar as reasonably pertinent to diagnosis or treatment.
Statements which are admissible under Evid.R. 803(4) are assumed to be reliable since the effectiveness of treatment often depends upon the accuracy of information related to the physician. State v. Boston
(1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. However, when the individual or patient making the statement is a child it is clearly not certain whether the child understands the need to be truthful to medical personnel. State v. Dever (1992), 64 Ohio St.3d 401, 596 N.E.2d 436.
In response, the Supreme Court of Ohio, in State v. Dever, supra, recommended that when the individual making the statement is a young child the court should consider the circumstances surrounding the making of statements to a medical professional before admitting those statements under Evid.R. 803(4). Id. The purpose of the inquiry is to determine whether or not the child, at the time the statements were made, were motivated by something other than the need to be truthful to the physician. Id. at 405, 593 N.E.2d 436. The Court emphasized that it intended this inquiry to be narrowly construed. It stated in part:
 "A court should not presume, * * * that the statements are unreliable merely because there is no indisputable evidence of the child's motivation. Rather, in a case such as this, when an examination of the surrounding circumstances casts little doubt on the motivation of the child, it is permissible to assume that the factors underlying Evid.R. 803(4) are present." Id. at 412, 596 N.E.2d 436.
Therefore, in order for the testimony of a child victim to be excluded as inadmissible hearsay under Evid.R. 803(4), there must be affirmative proof of undue influence. As a result, if the court finds no facts that impugn the child's motivation, then the evidence should be admitted pursuant to Evid.R. 803(4).
At issue in this case is whether the statements of the victims to a social worker employed by the Hancock County Department of Human Services in which the minors identified their father, Reigle, as their sexual abuser, qualify as statements made for purposes of medical diagnosis or treatment under this rule.
Although the foregoing Supreme Court authority was based on facts indicating that the child victims were examined by medical doctors, relevant case law has stated that the rule should also include statements made to psychologists, therapists and social workers. State v. Chappell
(1994), 97 Ohio App.3d 515, 646 N.E.2d 1191; In Re Weatherholt (Feb. 4, 2000), Seneca County App. No. 13-99-31, 13-99-32, unreported.
In Chappell the Eighth District stated that a social worker should not be per se excluded from the list of those who are qualified to testify under the rule. The question of whether a social worker should be permitted to testify pursuant to Evid.R. 803(4) depends upon the functions of the social worker as a witness. If the social worker encountered the victim for purposes of diagnosis or treatment, then the evidence may be admissible. However, if the statement was made during the course of a fact-finding or investigatory procedure, Evid.R. 803(4) is not applicable. Id. at 531, 534, 646 N.E.2d 1191.
In Weatherholt, we applied that same analysis. We found that because the child victims had been seeing the social workers for not less than a year before the statements were made and further, the statements were made during the course of that therapy that the children's statements were "during the course of ongoing treatment for emotional, behavioral and mental disorders. Thus the trial court did not err in admitting the statements." Weatherholt at *4.
Upon our review of the record, it is our conclusion that the statements made to Stonebreaker do not qualify as statements made for purposes of medical diagnoses or treatment as required by Evid.R.803(4). Throughout her testimony Stonebreaker makes references numerous times to her job as a "risk assessor" and "investigator". Further she constantly refers to her contact with the two victims in this case as an "investigation". The record is equally clear that at no time during, before or after the interviews with the two victims did Stonebreaker ever determine, "diagnose" or treat the patients as required. Further, Stonebreaker's sole purpose was to "investigate", "assess risk" and then determine if "treatment" was necessary.
At no time did Stonebreaker herself actually treat either of the child victims. Her contact with the child victims was the result of an investigation. Further she testified that her office was affiliated with the police department and the sheriff's department and at the appropriate time during the "investigation" the police are notified. The State argues that Stonebreaker did eventually recommend treatment but as stated above, if the statement was made during the course of an investigation or fact-finding procedure Evid.R. 803(4) is inapplicable.
Accordingly, we hold that because the statements made by the two child victims in this case were made during the course of an investigation or fact-finding procedure the trial court did err in admitting the victims' hearsay statements. It should be noted that neither of the alleged victims testified at trial, thus no independent verification of the veracity or reliability of Stonebreaker's testimony was available to the jury. Furthermore, the record reveals that the only other evidence offered by the State as proof of the four rape counts besides the testimony of Stonebreaker was a suspect confession, and limited medical testimony. Therefore, we cannot say that the trial court's failure to exclude Stonebreaker's testimony as hearsay was harmless error. Error having been shown Reigle's fourth assignment of error is sustained.
 5.The trial court committed prejudicial error by not severing the counts of the indictment for trial.
In his final assignment of error Reigle claims that the trial court erred by failing to sever the four rape counts contained in the indictment. Crim.R. 8(A) governs the joinder of offenses and provides that "Two or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on two or more acts * * * constituting * * * part of a course of criminal conduct."
Crim.R. 14 provides for relief from prejudice that results from joinder of offenses or defendants for trial. However, a defendant claiming error in the trial court's refusal to sever offenses or defendants under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced by the joinder. State v. Torres (1981), 66 Ohio St.2d 340.
Reigle claims that he was prejudiced by the joinder of the counts because the jurors were prejudiced by the testimony concerning one of the victims and had the counts been separated the jurors would have not heard the evidence. However, the record clearly shows that except for Stonebreaker's testimony discussed previously, all of the evidence admitted at trial was done in accordance with the rules of evidence. Furthermore, the testimony concerning one of the victims that in no way related to the rape of the second victim, could have been allowed under Evid.R. 404(b) as evidence of "other crimes, wrongs or acts." Therefore, Reigle has failed to show that the joinder of the counts prejudiced his trial and therefore, Reigle's final assignment of error is overruled.
Having found error prejudicial in the determination that Reigle is a sexually violent predator and in the admission of hearsay the judgment of the Court of Common Pleas of Hancock County is reversed and remanded for further proceedings in accordance with this opinion.
 __________________________ Bryant, J.
HADLEY, P.J. and SHAW, J., concur.
[1] The record contains information disclosing that Reigle was convicted in December 1987 for gross sexual imposition, a violation of R.C. 2907.05(A)(3). However, R.C. 2971.01(H) requires that the offense have been committed on or after the effective date of this section. It is not disputed that the 1987 offense does not qualify because it was committed prior to the effective date of R.C. 2971.01(H).